**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FELIMON CERDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 9023 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CHICAGO CUBS BASEBALL CLUB, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff David Felimon Cerda has filed a two-count third amended complaint against defendant Chicago Cubs Baseball Club, LLC, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act ("RHA"), 29 U.S.C. § 794 *et seq.* Before the Court is defendant's motion to dismiss plaintiff's third amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for a stay of the proceedings. For the reasons set forth below, the motion [40] is granted in part and denied in part. Status set for September 12, 2019 at 9:30 a.m.

**BACKGROUND**

Plaintiff David Felimon Cerda has Duchenne Muscular Dystrophy and uses a wheelchair for mobility. Defendant Chicago Cubs Baseball Club, LLC (the "Cubs") is a professional baseball team located on the north side of Chicago, Illinois. The team plays its home games at Wrigley Field. Cerda is a lifelong Cubs fan and attends multiple Cubs games each season at Wrigley Field.

In 2014, the Cubs began extensive renovations to Wrigley Field.[1] Cerda alleges that, prior to the renovations, he would watch games from a wheelchair seating area in the right field bleachers (top of Sections 317 and 318), a field box behind home plate (near Sections 118, 123, and 19-22), and an upper deck box beneath the press box. Cerda generally alleges that, as a result of the renovations, he can no longer sit in his preferred seats, his view of the field of play and his experience is worse than it was before the renovations, and the seating options available to wheelchair patrons is subpar. Cerda complains about certain Accessible Seating areas.[2] He also challenges the number of Accessible Seats in Wrigley Field, the Seating Map, and the availability of post-season playoff tickets. In particular, he complains about Accessible Seating in the following locations:

| Location | Section(s) | Complaint(s) |
| --- | --- | --- |
| Right Field Bleachers | 316, 317, and 318 | No ADA single general admission wheelchair seats sold in the top of these Sections |
| Left Field Bleachers | 305 | No ADA compliant wheelchair seats during 2016 and 2017 Seasons<br><br>Reserved for group sales |
| Center Field Bleachers | 307-309<br><br>307, 309, 310, and 337-341 | Seats located behind a dark pane of glass<br><br>No wheelchair access |

---

[1] After the 2014 Season, the Cubs demolished and then rebuilt the right and left field bleachers. After the 2016 Season, the Cubs demolished and reconstructed the lower box seating area behind home plate. After the 2017 Season, the Cubs demolished the lower box seats down the first and third base lines, including seating next to the dugouts.

[2] These are areas with a wheelchair space plus an adjoining companion seat next to it. (*See* dkt. 41, pg. 5 n2.)

| Lower Field Box (behind home plate) | 118, 129, and 19-22 | Moved Accessible Seating back several rows and down the first base line instead of centered behind home plate |
| Club Box | American Airlines 2014 Club | No ADA seats available |
| Under grandstand along third base line | General | Obstructed by grandstand |

<u>Right Field Bleachers</u>: Cerda contends that he can no longer sit in the top of Sections 317-318 because the bleachers now contain mostly "group seating" options which must be booked with at least 50 guests. He complains that he cannot purchase seats on an individual basis and that these tickets are much more expensive than regular general admission tickets.

<u>Left Field Bleachers</u>: Cerda says that, in 2016 and 2017, wheelchair seating was not available to individuals who purchased a single (non-group) general admission ADA ticket.

<u>Center Field Bleachers</u>: Cerda alleges that, while the center field bleachers have an accessible seating area, the area is not truly accessible because the games must be viewed from behind a "dark pane of glass." (Dkt. 35, ¶ 45.) Cerda further contends that Sections 307, 309, 310, and 337-341 are not available to wheelchair patrons.

<u>Lower Field Box</u>: Cerda alleges that the Cubs moved the row of lower field box wheelchair seats behind home plate farther back from the field of play and down the first base line (instead of being centered behind home plate).

<u>American Airlines 2014 Club</u>: Cerda says that he would "like to enjoy wheelchair seating in the front row of the lower box seats at Wrigley Field, in a seating area now designated the American Airlines 2014 Club." (*Id*., ¶ 31.) He says that the Cubs were not selling any ADA seats in this area for the 2018 Season.

Under the Grandstand: Cerda alleges that, while the Cubs say that Wrigley Field has ADA wheelchair seating under the grandstand along the third base line, the seating area does not actually comply with ADA requirements because the view is obstructed by the grandstand and is inferior to the view enjoyed by most other patrons.

In his third amended complaint, Cerda alleges violations under the ADA and RHA. Count I is brought under the ADA. Cerda alleges that, because the Cubs renovated Wrigley Field, the Cubs are required to comply with Title III of the ADA as well as the 2010 ADA Standards for Accessible Design (the "2010 Standards"). He says that wheelchair seating should be integral at Wrigley Field and should be substantially equal to or better than seating choices for other patrons. Cerda contends that the Cubs have violated their duty under the ADA and are refusing to make reasonable accommodations to comply with the ADA. Cerda requests the Court to order the Cubs to: (1) create a minimum of three ADA seats in the American Airlines Club, including seats near each of the dugouts and behind home plate; (2) restore ADA single general admission tickets for bleacher seats at regular prices; (3) restore wheelchair seating in the lower boxes behind home plate to the same or better condition as before the 2016 renovation to that area; (4) make seating in Section 305 available for single ticket sales at regular prices; (5) create ADA compliant seats in the center field bleachers; (6) create wheelchair seating in the lower field boxes down the first and third base lines; (7) obtain the total number of ADA seats required by the Act; (8) meet the vertical and horizontal dispersion requirements under the ADA; (9) create a Seating Map that identifies ADA seating; (10) change the post-season ticketing policy; and (11) pay reasonable attorney's fees, costs and expenses. Count II is brought under the RHA. Cerda alleges that, because the Cubs received federal financial assistance for the Wrigley Field renovations, the Cubs cannot intentionally discriminate against handicapped persons.

4

The Cubs move to dismiss or, in the alternative, stay the proceedings until the renovations are complete. The Cubs bring a factual challenge to Cerda's ADA claim, contending that Cerda lacks standing to bring his ADA claim because he does not face an imminent "injury in fact." The Cubs further say that they did not receive federal financial assistance for the reconstruction of the bleacher seats, and, therefore, Cerda's RHA claim fails.

## DISCUSSION

### I.  The Americans with Disabilities Act

"Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1076 (7th Cir. 2013). The ADA, 42 U.S.C. § 12101 *et seq.*, was created to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," to provide enforceable standards addressing discrimination, and to ensure that the Federal Government plays a central role in enforcing such standards. 42 U.S.C. § 12101(b). To bring a claim under the ADA, an individual must have a "physical or mental impairment which substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. Under the ADA, "a plaintiff must (1) allege past injury under the ADA; (2) show that it is reasonable to infer from [his] complaint that this discriminatory treatment will continue; and (3) show that it is also reasonable to infer, based on the past frequency of [his] visits and the proximity of [the public accommodation] to [his] home, that [he] intends to return to [the public accommodation] in the future." *Scherr*, 703 F.3d at 1074 (internal quotations omitted).

The Cubs move to dismiss Cerda's ADA claim pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Cerda lacks standing to seek injunctive relief because he cannot prove by a preponderance of the evidence that he faces an imminent "injury in fact."

5

A.      **Legal Standard**

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff.  *Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 698 (7th Cir. 2015) (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)).  The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. *Capitol Leasing*, 999 F.2d at 191.

The jurisdiction of federal courts is limited to "cases" and "controversies" as described in Article III, Section 2 of the Constitution.  "There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016).  To establish Article III standing, a plaintiff must establish "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." *Scherr*, 703 F.3d at 1074 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "To establish an 'injury-in-fact' for purposes of Title III of the ADA, which authorizes only prospective injunctive relief, a plaintiff must allege that a 'real and immediate' threat of future violations exist." *Faircloth v. McDonald's Corp. & McDonald's USA LLC*, No. 18 C 1831, 2018 WL 5921230, at *2 (N.D. Ill. Nov. 13, 2018) (citing *Scherr*, 703 F.3d at 1074-75).  The plaintiff has the burden of establishing these elements. *Lujan*, 504 U.S. at 561.  "If standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996)).

6

B.      **Analysis**

The parties only dispute the first element of standing:  whether Cerda has alleged an "injury in fact."  The Cubs say that Cerda faces no imminent "injury in fact" with regard to bleacher seating, field box seating, club/luxury box seating, field boxes down the first and third base lines, seats under the grandstand along the third base line, an alleged shortage of Accessible Seating through the entire ballpark, the Cubs' Seating Map, and post-season playoff tickets.  In response, Cerda only challenges the alleged shortage of Accessible Seating, club/luxury box seating, and vertical and horizontal dispersion.[3]  He says that he has established standing by alleging:  (1) the Cubs only have 46 of the 217 Accessible Seats required by ADA; (2) in 2017 he was unable to purchase an ADA seat to a game against the St. Louis Cardinals, and he believes that non-ADA seats were available for purchase at that time; (3) he was unable to purchase a lower box ADA seat for a game against the White Sox in 2018 because there were not enough ADA lower box seats; (4) the Cubs have failed to comply with the ADA's vertical dispersion requirements; (5) the Cubs have no luxury or club ADA seats; and (6) the Cubs do not have horizontal seating as required by the ADA.

In support of the Cubs' factual attack on subject matter jurisdiction, the Cubs submit a declaration from Doug Anderson, a Partner at LCM Architects (a firm which specializes in accessible design) and a second declaration from Carl Rice, Vice President of Wrigley Field Restoration and Expansion for the Cubs.  Doug Anderson avers that the Accessible Seats in the left and right field bleachers as well as behind home plate comply with the 2010 ADA Standards for Accessible Design.  (Dkt. 41-2 ¶¶ 4-43.)  Anderson outlines the dimensions of the average

---

[3] All arguments not addressed by Cerda are deemed waived.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver.").

7

wheelchair, the dimensions of the Accessible Seats, the line of sight each individual in a wheelchair has over standing spectators, the dimensions of an adjoining companion seating, and the route to Accessible Seats. (*Id*. ¶¶ 7-43.) Anderson also provides pictures and diagrams of Accessible Seating in the left and right field bleachers and behind home plate. (*Id*. pgs. 19-39.)

Carl Rice states, in relevant part, that Wrigley Field will have more than the number of accessible wheelchair spaces and accompanying companion seats required by the 2010 ADA Standards for Accessible Design than before the renovations. (Dkt. 41-1, ¶ 5.) He says that the bleachers were reconstructed in 2015 and that the Cubs did not receive any federal funding in connection with the reconstruction of the bleachers. (*Id*. ¶ 7.) His assessment can be broken down as follows:

| Area | Section(s) | Number of Accessible Seats | Type of Sale |
|---|---|---|---|
| Right Field Bleachers | 312 and 313 | 18 Accessible seats at top of Section | General admission, single tickets |
| Right Field Bleachers (Budweiser Patio) | Sections 316-318 | 15 Accessible Seats at top of Section | General admission, group tickets (more than 50 people) |
| Left Field Bleachers | Section 301 | 1 Accessible Seat, upper corner of Section | General admission, single tickets |
| Left Field Bleachers | Section 305 | 9 Accessible Seats at top of Section | General admission, group tickets (more than 50 people) |
| Left Field Bleachers | Section 306 | 11 Accessible Seats at top of Section | General admission, single tickets |
| Center Field Bleachers | Sections 307 and 309 | 16 Accessible Seats | General admission |
| Field/Lower Box | Sections 121-124 | 22 Accessible Seats | Purchased specific to seat and section |
| 1914 Club | Unknown | Unknown | Available to 1914 Club Members only |
| Terrace Reserved Infield and Outfield | Sections 216, 218, 220, 222, 223, 205, 206, and 208 | Unknown | Unknown |
| Upper Level | Sections 420-422 | Total unknown | Unknown |

Right Field Bleachers:  There are 33 Accessible Seats immediately above the bleachers in Sections 312, 313, and 316-318.  (*Id*. ¶ 9.)  As for Sections 312 and 313, there are a total of 18 Accessible Seats located at the top of the Sections.  (*Id*. ¶ 10.)  These seats are open to the public and sold as general admission single tickets.  (*Id*.)  In Sections 316-318, there are a total of 15 Accessible Seats located at the top of the Sections.  (*Id*. ¶ 11.)  These seats are general admission and are sold as group tickets (groups of 50 or more people).  (*Id*.)

Left Field Bleachers:  There are 21 Accessible Seats immediately above the bleachers in Sections 301, 305, and 306.  (*Id*. ¶ 12.)  Section 301 has one Accessible Seat at the upper corner of the Section.  (*Id*. ¶ 13.)  This seat is open to the public and is sold as a general admission single ticket.  (*Id*.)  Section 306 has 11 Accessible Seats located at the top of the Section.  (*Id*. ¶ 14.)  These seats are open to the public and sold on a general admission single ticket basis.  (*Id*.)  Section 305 has 9 Accessible Seats at the top of the Section.  (*Id*. ¶ 15.)  These are general admission seats and are reserved for group sales (groups of 50 or more people).  (*Id*.)

Center Field Bleachers:  There are 16 Accessible Seats between Sections 307 and 309.  (*Id*. ¶ 16.)

Field Box Seats:  Behind home plate, there are a total of 22 Accessible Seats.  (*Id*. ¶¶ 17-18.)  These seats were relocated within each section—they were generally moved back and down the first base line.  (*Id*.)  These tickets are sold "as a specific ticket for a specific seat, in a specific section."  (*Id*.)

1914 Club Seats:  These seats will be installed in April 2018.  (*Id*. ¶ 19.)  Only 1914 Club members may purchase these seats.  (*Id*.)  There is a long waitlist for 1914 Club membership.  (*Id*.)  Cerda is not on the waitlist.  (*Id*.)

Terrace Reserved Infield:  There are Accessible Seats in Sections 216, 218, 220, 222, and 223.  (*Id*. ¶ 20.)  Likewise, the Terrace Reserved Outfield (Sections 205, 206, and 208) has Accessible Seats.  (*Id*.)  These seats are located under the upper deck.  (*Id*.)

Upper Level:  Renovations will begin at the end of the 2018 Season and are scheduled to be completed in 2019.  (*Id*. ¶ 21.)  Prior to the renovations, Accessible Seating was available in front of the press box entrances in Sections 420-422.  (*Id*.)  Following the renovations, Accessible Seating will be available in front of the Catalina Club as well as in four other locations on the upper level.  (*Id*.)  This will increase the number of Accessible Seats in the upper level by 31 seats.  (*Id*.)  Rice further avers that Wrigley Field will have more Accessible Seats than required by the 2010 Standards after the renovations are complete.  (*Id*. ¶ 23.)

Cerda contends that standing exists because he has actually been injured and he will suffer future injuries.  In support thereof, Cerda provides (1) his own affidavit; (2) a copy of the Cubs' response to his first set of discovery requests; and (3) an affidavit from his father, who also serves as plaintiff's counsel in this case, David A. Cerda.

Plaintiff states in his affidavit that he sat in wheelchair seating in center field between Sections 307 and 309 on Opening Day in 2012.  (Dkt. 54-1, ¶ 2.)  At that time, a dark mesh screen obstructed the view of the field, and he did not enjoy the view.  (*Id*. ¶¶ 3-6.)  Plaintiff sat in the center field bleachers on Opening day in 2018, and the dark mesh screen had been replaced by a dark glass, which still presents obstructed views of the field.  (*Id*. ¶ 7.)  Plaintiff would like to sit in the front row at Wrigley Field and sit in Sections 316-318.  (*Id*. ¶ 14.)   In 2017, plaintiff says that he was unable to purchase an ADA seat to a game against the St. Louis Cardinals, and he believes that non-ADA seats were available for purchase at that time.  (*Id*. ¶ 18.)  In late March or early April of 2018, plaintiff says that he attempted to purchase an ADA seat in the lower box for

a game against the Chicago White Sox in May of 2018 for his birthday but was unable to do so because all of the lower box ADA seats were sold out. (*Id.* ¶ 19.) On Opening Day in 2018, plaintiff was not able to sit in Section 301 on the concourse level but had to sit in the tier above Section 312. (*Id.* ¶ 20.)

Plaintiff's father, David A. Cerda, says that he went to a game with plaintiff's godfather, Professor Joseph P. Ferrie, on May 8, 2018, and they walked around the bleachers asking Guest Services personnel and ushers for the location of ADA bleacher seats. (Dkt. 54-3, ¶ 3.) Plaintiff's father says that Guest Services personnel informed Professor Ferrie that there were only 2 ADA seats in Section 306 for individual sale and only 2 ADA seats in Section 312. (*Id.* ¶¶ 6-9.)

## 1. Number of Accessible Seats

Cerda complains that Wrigley Field does not have the minimum number of required Accessible Seats, that he has been injured in the past because of the Cubs' ADA violations, and that he reasonably believes he will continue to be injured in the future based on the Cubs' ongoing ADA violations. Cerda contends that there are only 46 of the required 217[4] Accessible Seats at Wrigley Field. He arrives at this calculation based on his belief that the Cubs should not count seats with obstructed views (*i.e.*, the seats under the grandstand and in the center field bleachers) or seats sold on a group basis. Cerda also points to the Cubs' discovery responses where the Cubs say that they had 159 ADA seats. Cerda further states that, contrary to the Cubs' representations, there are only 2 ADA seats in Section 306 and 2 ADA seats in Section 312, which he discovered with Professor Ferrie while attending a game on May 8, 2018. Cerda further says that he was injured because he was unable to purchase an ADA seat to a game in 2017 and in 2018.

---

[4] Cerda contends that Wrigley Field has a seating capacity of 41,160, and the ADA Table for the Number of Wheelchair Spaces in Assembly Areas requires "36, plus 1 for each 200, or fraction thereof, over 5000" for seats of 5001 and over. *See* 2010 Standards, Table 221.2.1.

The Cubs say that Cerda faces no imminent injury from an alleged shortage of Accessible Seats because Cerda has never been injured by a shortage of Accessible Seats, his calculation of the total number of Accessible Seats in Wrigley Field is incorrect, and his reduction of Accessible Seat numbers is based on hearsay and illogical arguments. According to the Cubs, only the areas that have been altered are required to comply with the 2010 Standards. Pursuant to the regulations, "[a]ny alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1). Under Section 36.406(a)(3), alterations made after March 15, 2012 must comply with the 2010 Standards. The Cubs say that, at the time of these calculations, no work had been done to the entire upper deck and work was still outstanding on the lower level, including the outfield and along the first and third base lines.

Moreover, the Cubs argue that they have presented sufficient evidence showing that there is adequate Accessible Seating in the bleachers, and Cerda's methodology of counting the number of Accessible Seats is based on hearsay and illogical arguments. The Cubs argue that Cerda's attempts to counter this evidence with statements made to his godfather, Professor Ferrie, should not be considered because the statements are inadmissible hearsay. Moreover, the Cubs say that Cerda's contention that there should be no Accessible Seats in the group sales sections is at odds with the ADA's mandate for equal access to goods, services, and facilities. *See* 42. U.S.C. § 12182(b)(2)(a)(i). The Cubs further contend that the 16 Accessible Seats in the centerfield bleachers should be counted even though the seats are located behind a pane of tinted glass. According to the Cubs, some patrons may not mind, and might even enjoy, the protection offered by the glass. Finally, the Cubs say that the 48 Accessible Seats under the grandstand along the

12

third base line (Sections 205, 206, 216, 218, 220, 222 and 223) should count. The Cubs say that Cerda admits that the Cubs have provided equivalent seating options for wheelchair patrons when he stated, "there are hundreds of seats under the grandstand along the third base line available to able-bodied persons who choose to sit in the lousiest seats in the house." (*See* dkt. 54, pg. 10; dkt. 58, pg. 8.)

The Cubs further argue that, while Cerda claims that he could not purchase a seat to a game against the St. Louis Cardinals in 2017, he has provided the Court with no evidence showing that this was the result of an overall shortage of Accessible Seats, and it is not an ADA violation to sell out of Accessible Seats. The Cubs point out that Cerda's declaration does not identify when he tried to purchase the seats, the type of seats he sought to purchase, or if there were non-Accessible Seats of the same type available for purchase at that time. Moreover, the seating in Wrigley Field changed after the 2017 season. As a result, the conditions that may have caused an injury to Cerda at that time may no longer exist.

The Cubs also contend that Cerda's claim that he was unable to purchase an Accessible Seat in the field box for a May 2018 game against the Chicago White Sox is vague and, according to the Cubs, not credible. The Cubs argue that Cerda submits no evidence showing that the Accessible Seats were not available to him because of an overall shortage of seats. The Cubs further argue that there are 22 Accessible Seats in the field box area, and it is not surprising that these seats may have been sold out given that Cubs v. White Sox games are popular games to attend. The Cubs further contend that Cerda's claim lacks any credibility, and the Court should not give any weight to his claim because he does not state who he spoke with, when he tried to purchase the tickets, which game he wanted to attend, or whether the non-Accessible Seats in the lower box were sold out.

After reviewing the evidence and arguments submitted by both parties, the Court finds that Cerda has met his burden to establish standing as it relates to the number of Accessible Seats. In his affidavit, plaintiff says that he was harmed because he was unable to purchase a ticket to a game in 2017 and in 2018. With regard to the 2018 game, Cerda states, "[i]n late March or early April 2018, I attempted to purchase an ADA seat anywhere in the lower box ADA Sections for a game against the Chicago White Sox in May of 2018 for my 21st birthday. I was informed that all the lower box ADA seats were sold out." (Dkt. 54-1, ¶ 19.) This is sufficient to show that Cerda suffered an injury due to a shortage of Accessible Seats and, based on the allegations in his third amended complaint, it is reasonable to infer that this discriminatory behavior will continue. Moreover, while the Cubs say that Wrigley Field will have more than the number of Accessible Seats required by the 2010 Standards than before the renovations, the Court is unable to discern whether the Cubs actually have the total number of required Accessible Seats. The Cubs contend that Cerda's calculation of 217 seats is incorrect because the renovations are still on-going. But in making this contention, the Cubs do not say what the number should be and whether the Cubs have satisfied this number. Based on this, the Court finds that Cerda has shown, at this time, that he will suffer an imminent "injury in fact" sufficient to confer standing.

### 2. Club Box Seating

Cerda next says that he is suffering an ongoing injury because there are no ADA seats in any luxury box. Cerda says that he wants to sit in a luxury box but cannot do so, even as a guest of the 1914 Club, because there are no ADA seats in a luxury box or club at Wrigley Field. He would like the Cubs to reserve at least 4 seats in the front row in the 1914 Club seating area for wheelchair patrons without making them part of the 1914 Club.

14

The Cubs respond that Cerda cannot show that he will be injured by the alleged absence of Accessible Seats in the 1914 Club because he is not a member of the Club, is not on the waitlist for the Club, and has not been invited to sit in these seats. The Cubs say that tickets for these seats are only available to members of the 1914 Club. They say that, because Cerda is not a member of this Club and is not on the waitlist to join this Club, he lacks standing to challenge ADA seating in this area. *See Carroll v. ABNB Fed. Credit Union*, 2018 WL 1180317, at *4 (E.D. Va. Mar. 5, 2018) (plaintiff did not have standing to sue a credit union because the plaintiff was not a member and was not qualified to become a member).

The Court agrees that, because Cerda is not a member of the 1914 Club and does not claim that he is on the waitlist or has applied to be on the waitlist, he does not have standing to pursue this challenge. To the extent that Cerda is challenging the availability of ADA seating in luxury boxes as a whole in Wrigley Field, he has not developed this argument and/or provided the Court with any evidence in support. Accordingly, Cerda may not pursue his challenge to this seating area at this time.

### 3. Vertical and Horizontal Dispersion

Cerda also complains that he has been injured due to the Cubs' violation of vertical dispersion requirements. He says that he was not able to sit in the bleachers on the concourse level on Opening Day in 2018 but instead had to sit in a higher tier above Section 312. Cerda maintains that the Cubs continue to violate the ADA's requirement for vertical dispersion of wheelchair seating and he reasonably believes that he will continue to be injured as a result. He points to Section 221.2.3.2 of the 2010 Standards which provides, "[w]heelchair spaces shall be dispersed vertically at varying distances from the screen, performance area, or playing field." 2010 Standards § 221.2.3.2. An exception to this provision states, "[i]n bleachers, wheelchair spaces

shall not be required to be provided other than rows at points of entry to bleacher seating." *Id*. Cerda goes on to quote the Advisory Comments, which state, "[w]hen wheelchair spaces are dispersed vertically in an assembly facility they are placed at different locations within the seating area from front-to-back so that the distance from the screen, stage, playing field, area of sports activity, or other focal point is varied among wheelchair spaces," and "[v]ertical, center, or side aisles adjoining bleacher seating that are stepped or tiered are not considered entry points." *Id*. Cerda contends that there is no "front-to-back" dispersion at Wrigley Field for wheelchair patrons. Rather, every ADA seat is in the last row. In support, he cites *Paralyzed Veterans of America v. Ellerbe Becket Architects & Eng'rs, P.C.*, 950 F. Supp. 393 (D.D.C. 1996), where the court found that a new sports arena did not comply with the ADA's dispersal requirements because most of the Accessible Seats were located in the end zone areas. *Id*. at 405. He also cites *Colorado Cross-Disability Coal. v. Colorado Rockies Baseball Club, Ltd.*, 336 F. Supp. 2d 1141 (D. Col. 2004), where the court found that the baseball club could not "ghettoize" and cluster wheelchair spaces in specific areas of the stadium. *Id*. at 1149.

The Cubs respond that Cerda points to no regulation or legal authority showing that Accessible Seats must be placed in the first row of a ballpark or in the first rows of every Section. The Advisory to § 221.2.3 of the 2010 Standards states, "[c]onsistent with the overall intent of the ADA, individuals who use wheelchairs must be provided equal access so that their experience is substantially equivalent to that of other members of the audience. Thus, while individuals who use wheelchairs need not be provided with the best seats in the house, neither may they be relegated to the worst." 2010 Standards § 221.2.3 Advisory. According to the Cubs, the guidelines generally state that ADA seats must be placed at varying distances from the playing field. The Cubs say that they have complied with the requirements of vertical dispersion because there are Accessible Seats

16

at three distances from the field: (1) 22 Accessible Seats in the Field Box; (2) 48 Accessible Seats in the Terrace Reserved Sections, located behind the Field Box Sections; and (3) 19 Accessible Seats in the Upper Deck, which has yet to be renovated. Additionally, the bleacher seats have Accessible Seats roughly halfway between the field and the highest seats.

Cerda also says that he is suffering an ongoing injury because of the lack of horizontal dispersion of Accessible Seating. Cerda says that there are no ADA compliant seats down the third base line, only a few seats down the first base line (Section 124), none available for individual purchase in center field, two in right field, and three in left field for individual purchase. Cerda says he is suffering an actual ongoing injury because his horizontal seating opportunities are wildly restricted in violation of the ADA.

For horizontal dispersion, the Cubs say that they have met the 2010 Standards. According to the Advisory to § 221.2.3.1, Accessible Seats must be placed "around the field of play." 2010 Standards § 221.2.3.1 Advisory. The Cubs say that there are Accessible Seats in 21 locations around the field of play sold on an individual basis as well as Accessible Seats in 4 locations sold on a group basis. They further say that horizontal dispersion will be even greater after the renovations to the upper deck are completed. The Cubs say that the scenario here is different than that of the *Colorado Rockies* case and the *Paralyzed Veterans* case cited by Cerda. In those cases, unlike here, Accessible Seats were clustered in various parts of the arena. The Cubs say that that is not the case here, as the maps and evidence show that Accessible Seating is dispersed throughout the venue in compliance with the ADA.

The Court finds that Cerda has not shown that he has suffered and will likely suffer an imminent "injury in fact" with regard to vertical dispersion in the bleachers at Wrigley Field. As noted by the Cubs, the 2010 Standards do not say where Accessible Seats must be located and do

17

not require the Cubs to place ADA seats in the front row. Moreover, the evidence provided by the Cubs shows that there is vertical dispersion of ADA seating throughout Wrigley Field. As for horizontal dispersion, Cerda says that he continues to suffer actual ongoing injuries because he is unable to enjoy unobstructed views from the third base line. The evidence produced by the Cubs, including the Seating Map attached to Rice's Declaration, shows Accessible Seating behind home plate, in the bleachers, and along the third base line. At first glance, this would appear to show that Accessible Seating is not clustered in undesirable locations in Wrigley Field. However, when taking into account Cerda's assertion that Accessible Seating along the third base line is obstructed, which the Cubs do not dispute, this only leaves unobstructed Accessible Seating in the bleachers and behind home plate. Without any options for Accessible Seating along the first and third base lines, the Court finds that Cerda has shown that he will suffer an "injury in fact." Accordingly, Cerda may pursue his challenge to horizontal dispersion in Wrigley Field.

## II.    The Rehabilitation Act

Cerda next alleges that defendant violated the RHA because it received federal financial assistance for the reconstruction of the bleachers and then intentionally discriminated against him for profit by, among other things, replacing ADA wheelchair seating in the right field bleachers with premium seating and by refusing to install ADA wheelchair seating in the American Airlines 2014 Club. Section 504 of the Rehabilitation Act provides that no individual with a disability shall be discriminated against under any program receiving federal financial assistance. 29 U.S.C. § 794. To establish a Section 504 claim, Cerda must show that (1) he is a handicapped individual as defined by the Act; (2) he is otherwise qualified for participation in the program; (3) the program receives federal financial assistance; and (4) he was denied the benefits of the program solely because of his handicap. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir.

18

2019) (internal quotations omitted).  The Cubs move to dismiss, arguing that tax credits are not "federal financial assistance" under Section 504.

### A.  Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).  Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556).  "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### B.  Analysis

The parties only contest the third element of a Section 504 claim:  whether the Cubs received federal financial assistance.  Cerda alleges that the Cubs received federal financial

19

assistance for the bleacher renovations because the National Park Service gave the Cubs a tax break in return for reducing the size of the Jumbo Trons in the bleachers. The Cubs respond that tax credits do not constitute "federal financial assistance" under Section 504, citing *Chaplin v. Consol. Edison Co. of New York, Inc.*, 628 F. Supp. 143 (S.D.N.Y. 1986) (private entity's application of tax credits to capital investments on tangible property did not constitute federal financial assistance to all programs and divisions within that entity's organization).

The Court agrees with defendant's contention that tax credits do not constitute federal financial assistance under the RHA as it applies to this case. Federal financial assistance, in the context of the RHA, typically applies to cases involving a direct subsidy. *See Merrifield v. Beaven/Inter-American Companies, Inc.*, No. 89 C 8436, 1991 WL 171376, at *3 (N.D. Ill. Aug. 30, 1991) ("The term 'assistance' connotes transfer of government funds by way of subsidy, not merely exemption from taxation."). Moreover, Cerda has provided the Court with no additional facts or legal authority to support this theory of a Section 504 violation. Without more, the Court finds that Cerda has failed to plausibly state a claim. The Court "has no duty to research and construct legal arguments available to a party, especially when he is represented by counsel." *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) (internal quotation marks omitted). "[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 n.3 (7th Cir. 2008) (citing *Tyler*, 70 F.3d at 464); *see also Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 495 n.68 (7th Cir. 2014) (stating that perfunctory and undeveloped arguments are waived). Accordingly, defendant's motion to dismiss as to Count II is granted. Cerda's claim under the Rehabilitation Act is denied without prejudice.

20

**III.     Motion to Stay**

The Cubs' request to stay the proceedings is denied as moot.

**CONCLUSION**

For the aforementioned reasons, defendant's motion to dismiss or, in the alternative, to stay is granted in part and denied in part.  As for Cerda's ADA claims, he may proceed with his challenge to the number of Accessible Seats and horizontal dispersion for Accessible Seats at Wrigley Field; he may not proceed with his challenge to Accessible Seating in club/luxury box locations or vertical dispersion.  Cerda's claim under the Rehabilitation Act is dismissed without prejudice.  The request for a stay is denied as moot.  Status set for September 12, 2019 at 9:30 a.m.

**SO ORDERED.**                                              **ENTERED: August 30, 2019**

_____
**HON. JORGE ALONSO**
**United States District Judge**