**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FELIMON CERDA, | ) | No. 17-9023 |
| | ) | |
| Plaintiff, | ) | Judge Jorge L. Alonso |
| | ) | |
| vs. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COMES Defendant Chicago Cubs Baseball Club, LLC, ("Cubs" or "Defendant") by and through its attorneys, and hereby answers the Third Amended Complaint (hereinafter "Complaint") of the Plaintiff, David Felimon Cerda ("Plaintiff"). Plaintiff's claim for relief pertaining to any club or luxury box seating, vertical dispersion, and claims under the Rehabilitation Act have been dismissed by this Court. Therefore, Defendant answers only the allegations in the Complaint that are relevant to Plaintiff's Americans with Disabilities Act (ADA) challenge to the number of accessible wheelchair spaces and horizontal dispersion for accessible wheelchair spaces as follows:

<u>THE PARTIES</u>

1.      Plaintiff David Felimon Cerda resides in Chicago, Illinois.

**ANSWER:**     Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 1, and on that basis, Defendant denies the allegations of Paragraph 1.

2.      The Chicago Cubs Baseball Club, LLC (hereinafter the "Chicago Cubs") is a corporation registered in the State of Illinois and does business in Chicago, Illinois.

**ANSWER:**     Admitted.

<u>JURISDICTION AND VENUE</u>

3.　　This Court has subject matter jurisdiction over plaintiffs federal claims pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*

**<u>ANSWER:</u>**　　Paragraph 3 sets forth jurisdictional allegations and legal conclusions to which no response is required and, on that basis, Defendant denies the allegations of Paragraph 3. Answering further, Defendant states that Plaintiff's claims under the Rehabilitation Act were dismissed by this Court and no response is required.

4.　　This Court has personal jurisdiction over the defendant as all actions complained of herein occurred in Chicago, Illinois.

**<u>ANSWER:</u>**　　Paragraph 4 sets forth jurisdictional allegations and legal conclusions to which no response is required.　To the extent a response is required, Defendant admits that the allegations in Plaintiff's Complaint encompass events that are located in Chicago, Illinois and allegedly arose in this judicial district, but Defendant denies any wrongdoing.

5.　　Venue is proper in this district because all the conduct complained of herein occurred in this district.

**<u>ANSWER:</u>**　　Defendant admits that allegations in Plaintiff's Complaint encompass events that were located in Chicago and allegedly arose in this judicial district, but Defendant denies any wrongdoing.

<u>THE FACTS</u>

6.　　The Chicago Cubs field a professional baseball team that plays home games at Wrigley Field in Chicago.

**<u>ANSWER:</u>**　　Admitted.

7.     Plaintiff has Duchenne Muscular Dystrophy, can no longer walk, and uses a wheelchair for mobility. Plaintiff has used a wheelchair for mobility since 2007. Plaintiff has attended Cubs games every year for at least the last fifteen years and intends to continue attending Cubs games as long as he can.

**ANSWER:**    Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 7, and on that basis, Defendant denies the allegations of Paragraph 7.

8.     Plaintiff is a Chicago Cubs fan, and prior to 2014 attended games in a wheelchair seating area in the right field bleachers at the top of Sections 317 and 318, in a field box wheelchair seating area behind home plate in an area between and around Sections 118 and 123 and Sections 19-22, and in an upper deck box wheelchair seating area beneath the Press Box.

**ANSWER:**    Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 8, and on that basis, Defendant denies the allegations of Paragraph 8.

9.     Beginning in 2014, the Chicago Cubs began an extensive renovation of Wrigley Field. The Cubs have announced that the renovation of Wrigley Field and the areas surrounding it will cost $750 million.

**ANSWER:**    Defendant admits that it began a renovation of Wrigley Field in 2014, and that the estimated cost of the renovation was $750 million.  Defendant denies the remaining allegations of Paragraph 9.

10.     As part of the renovation of Wrigley Field, after the 2014 Season the Chicago Cubs demolished the left and right field bleachers to the ground and then rebuilt the left and right field bleachers from the ground up.

**ANSWER:**    Defendant admits that as part of the renovation the left and right field bleachers at Wrigley Field were reconstructed.

11.    Since 2016 and to date, the top of Sections 317 and 318 of the right field bleachers that at one time had ADA wheelchair seating is now part of a special ticketing area featuring a bar.

**ANSWER:**    Defendant admits only that the top of the sections formerly numbered Sections 317 and 318 of the right field bleachers are now a patio area ticketed on a group basis, that this area includes a bar, and that some accessible wheelchair seating was located in this area prior to reconstruction of the bleachers. Defendant denies the remaining allegations of Paragraph 11.

12.    This seating area in Sections 316, 317 and 318 of the right field bleachers is designated by the defendant as a "Premium" seating area known as the "Budweiser Patio."

**ANSWER:**    Defendant admits only that the sections formerly numbered Sections 316, 317, and 318 are part of the Budweiser Patio. Defendant denies the remaining allegations of Paragraph 12.

13.    The Budweiser Patio is a group seating area and must be booked with a minimum of 50 guests.

**ANSWER:**    Defendant admits that the Budweiser Patio is reserved for group sales of typically 50 or more people. Defendant denies the remaining allegations of Paragraph 13.

14.    Tickets purchased for the Budweiser Patio include all food and beverages, including alcoholic beverages.

**ANSWER:**    Defendant admits that when a patron purchases a ticket for the Budweiser Patio, the ticket includes food and beverages, including alcoholic beverages.

4

15. Budweiser Patio tickets are much more expensive than general admission bleacher tickets.

**ANSWER:** Defendant admits that Budweiser Patio tickets are typically more expensive than general admission bleacher tickets due to the inclusion of food and beverage in the ticket price. Defendant denies the remaining allegations of Paragraph 15.

16. A person purchasing a single general admission bleacher ticket does not have access to the Budweiser Patio.

**ANSWER:** Defendant admits that only the patrons who purchase Budweiser Patio tickets have access to the Budweiser Patio.

17. A person purchasing a single general admission ADA bleacher ticket cannot sit in accessible seating in the Budweiser Patio.

**ANSWER:** Defendant admits that only the patrons who purchase Budweiser Patio tickets have access to the Budweiser Patio.

18. Prior to the reconstruction of the right field bleachers, plaintiff enjoyed a comradery with other wheelchair patrons who sat in Sections 317 and 318.

**ANSWER:** Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 18, and on that basis, Defendant denies the allegations of Paragraph 18.

19. Although Sections 316, 317 and 318 are physically suitable for some ADA wheelchair seating, wheelchair seating at the top of Sections 316, 317 and 318 cannot be counted as ADA general admission accessible seating under the 2010 Standards because single general admission seats in the Budweiser Patio are not available for purchase.

**ANSWER:** Defendant states that Paragraph 19 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 19.

20.     In 2016 and 2017, plaintiff attended Cubs games at Wrigley Field and though he would have liked to, he was unable to sit in the right field bleachers because there were no ADA single general admission wheelchair seats in the right field bleachers.

**ANSWER:** Defendant denies that there were no individual, general admission accessible wheelchair spaces in the right field bleachers in 2016 and 2017. Defendant lacks sufficient information at this time to admit or deny the remaining allegations set forth in Paragraph 20, and on that basis, Defendant denies the remaining allegations of Paragraph 20.

21.     On Opening Day 2018, plaintiff will still not be able to sit at the top Sections 316, 317, or 318 because he and a companion will not be able to purchase single general admission tickets at a general admission ticket price and sit in these seats.

**ANSWER:** Defendant admits that the top of the sections formerly numbered Sections 316, 317, and 318 are part of the Budweiser Patio and reserved for group sales of typically 50 or more people. Defendant lacks sufficient information at this time to admit or deny the remaining allegations set forth in Paragraph 21, and on that basis, Defendant denies the allegations of Paragraph 21.

22.     The top of Sections 316, 317, and 318 along with top of Sections 301, 302 and 303 are the bleacher seating areas closest to the field of play accessible via a wheelchair from the main concourse.

**ANSWER:** Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant. To the extent this allegation does not relate to Plaintiff's claim regarding vertical dispersion, Defendant admits that

the sections formerly numbered Sections 316, 317, and 318 and Sections 301, 302, and 303 are located in the bleacher areas. Defendant denies the remaining allegations of Paragraph 22.

23.     The reconstruction of the left and right field bleachers commenced after the 2014 Season should not make plaintiffs view of the field of play and experience worse than it was before the reconstruction.

**ANSWER:**     Paragraph 23 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 23.

24.     In 2018, plaintiff's view of the field of play and experience in the right field bleacher ADA seating area should be equal to if not better than his view of the field of play and experience than before the reconstruction of the bleachers.

**ANSWER:**     Paragraph 24 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 24.

25.     Before the reconstruction of the left field bleachers, Wrigley Field did not have any ADA wheelchair seating in the left field bleachers.

**ANSWER:**     Admitted.

26.     In 2016 and 2017 there were still no ADA wheelchair seats in the left field bleachers available to persons who purchased a single (non-group) general admission ADA bleacher ticket.

**ANSWER:**     Defendant admits that in 2016 and 2017 no accessible wheelchair seating was provided in the left field bleachers, but states that pursuant to the planned construction phasing for the renovation, work in the sections of the bleachers immediately adjacent to the grandstands, including the provision of accessible wheelchair seating in this area, was always planned for later phases of the renovation project.

27.     Sometime before the end of the 2017 Season, the Cubs announced that the renovations of the bleachers was complete.

**ANSWER:**     Denied as stated.  Defendant admits that while renovation work on the main portion of the bleachers was completed prior to the end of the 2017 Season, pursuant to the planned construction phasing for the renovation, certain work on the left field and right field bleachers remained to be completed in construction phases subsequent to 2017.

28.     On December 15, 2017, plaintiff filed his original Complaint in this case. Dkt. No. 1.

**ANSWER:**     Admitted.

29.     On December 15, 2017, the Cubs were served with plaintiffs original Complaint. Dkt. No. 5.

**ANSWER:**     Admitted.

30.     Plaintiffs original Complaint alleged, in part, that there were no ADA seats in the left and right field bleachers.

**ANSWER:**     Plaintiff's original Complaint speaks for itself.  To the extent a response is required, Defendant admits that Plaintiff's original complaint alleged that there were no ADA seats in the left and right field bleachers, but Defendant denies these allegations.

31.     In response to plaintiffs original Complaint, the Cubs began making physical alterations and/or changed their seating policy to create new ADA seats in the left and right field bleachers.

**ANSWER:**     Defendant admits only that the renovations in the left and right field bleachers included new accessible wheelchair seating. Defendant denies the remaining allegations in Paragraph 31.

8

32.     Sometime after December 15, 2017, the Cubs changed their existing seating policy and/or created a new seating policy to create certain new wheelchair seats in the bleachers.

**ANSWER:**     Denied.

33.     Sometime after December 15, 2017, the Cubs requested permits from the City of Chicago to work on new wheelchair seating in the left and right field bleachers.

**ANSWER:**     Denied.

34.     Sometime after December 15, 2017, the Cubs began working on new wheelchair seating in the left and right field bleachers.

**ANSWER:**     Denied.

35.     In 2017, there were no ADA compliant wheelchair seats in Section 305 of the right field bleachers.

**ANSWER:**     Denied.

36.     On Opening Day 2018, wheelchair seats will not [sic] available for single purchase in Section 305 because they must be purchased with a minimum group of tickets.

**ANSWER:**     Defendant admits that the accessible wheelchair seating provided at the top of the section formerly numbered Section 305 typically is sold as part of group ticketing, and denies the remaining allegations of Paragraph 36.

37.     Section 305 is reserved for group sales of, typically, 50 or more people.

**ANSWER:**     Defendant admits that the accessible wheelchair seating provided at the top of the section formerly numbered Section 305 typically is sold as part of group ticketing, and denies the remaining allegations of Paragraph 37.

38.     Tickets in Section 305 are more expensive than general admission bleacher tickets.

**ANSWER:** Defendant admits that the top row of seating in the section formerly numbered Section 305 typically is priced higher than general admission bleacher seating in Section 305 and in other general admission bleacher sections due to the inclusion of food and beverage in the ticket price.

39.     A person purchasing a single general admission bleacher ticket does not have access to Section 305.

**ANSWER:** Denied.

40.     A person purchasing a single general admission ADA bleacher ticket cannot sit in accessible seating in Section 305.

**ANSWER:** Defendant admits that the accessible wheelchair seating provided at the top of the section formerly numbered Section 305 typically is sold as part of group ticketing, and denies the remaining allegations of Paragraph 40.

41.     On Opening Day 2018, wheelchair seating in Section 305 cannot be counted as ADA general admission seating under the 2010 Standards because Section 305 seats are not available for purchase unless they are purchased with of a minimum group of, typically, 50 tickets.

**ANSWER:** Paragraph 41 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 41.

42.     On Opening Day 2018, plaintiff will still not be able to sit in Section 305 because he and a companion will not be able to purchase single general admission tickets at a general admission ticket price and sit in these seats.

**ANSWER:** Defendant admits that the accessible wheelchair seating provided at the top of the section formerly numbered Section 305 typically is sold as part of group ticketing, but states

that accessible wheelchair seating is available for purchase on a single ticket general admission basis in the adjacent section. Defendant denies the remaining allegations of Paragraph 42.

**ANSWER:**

43.     On Opening Day 2018, the Cubs will not have ADA compliant wheelchair seats in center field.

**ANSWER:**     Denied.

44.     The Chicago Cubs maintain that ADA compliant wheelchair seating is available in the center field bleachers between Sections 307-309.

**ANSWER:**     Defendant admits that accessible wheelchair seating is available in the center field bleachers between the sections formerly numbered Sections 307-309.

45.     Patrons on the main concourse between Sections 307-309 must view the field of play behind a dark glass pane.

**ANSWER:**     Defendant admits that the accessible wheelchair seating in the center field bleachers is behind a pane of glass, and denies the remaining allegations set forth in Paragraph 45.

46.     Viewing the field of play behind a dark glass pane is not a view of the field of play substantially equivalent to, or better than, the views enjoyed by general admission ticketed patrons in the bleachers.

**ANSWER:**     Paragraph 46 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 46.

47.     The so-called wheelchair area in the center field bleachers between Sections 307-309 cannot count as part of the total number of ADA wheelchair seats available to patrons.

**ANSWER:**    Paragraph 47 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 47.

48.    Wheelchair patrons do not have access to Sections 307, 309, 310, and 337-341 in the center field bleachers.

**ANSWER:**    Defendant admits that accessible wheelchair seating is not located in the sections formerly numbered Sections 337-341 and denies the remaining allegations of Paragraph 48.

49.    After the 2016 Season, the Chicago Cubs demolished to the ground the lower field box seats behind home plate, including the lower field box wheelchair seating area behind home plate where the plaintiff sat before the 2017 Season.

**ANSWER:**    Defendant admits only that certain portions of the concrete structure of the lower level grandstands behind home plate were replaced as part of the renovation and denies the remaining allegations of Paragraph 49.

50.    After the 2016 Season, the row of lower field box wheelchair seats behind home plate was moved back several rows farther from the field of play.

**ANSWER:**    Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant.

51.    After the 2016 Season, the row of lower box wheelchair seats behind home plate was moved down the first base line instead of being centered behind home plate.

**ANSWER:**    Defendant admits that as part of the renovation, the designated wheelchair spaces previously provided at the front of the sections formerly numbered Sections 120-122 were removed, accessible wheelchair spaces were created in the sections currently numbered Sections 117-120, which are located behind home plate, and that additional accessible wheelchair spaces

also were created at other locations on the 100 Level. Defendant denies the remaining allegations of Paragraph 51.

52. In 2017, the plaintiff attend [sic] a Cubs game and sat in the field box wheelchair seating which is now farther away from the field of play and down the first base line instead of being centered behind home plate.

**ANSWER:** Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant. To the extent this allegation does not relate to Plaintiff's claim regarding vertical dispersion, Defendant admits only the changes to accessible wheelchair seating in the box seating on the 100 Level set forth in its response to Paragraph 51 of the Complaint. Defendant lacks sufficient information at this time to admit or deny the remaining allegations set forth in Paragraph 52, and on that basis, Defendant denies the allegations of Paragraph 52.

53. Plaintiff would like to enjoy lower field box wheelchair seating at least as close to the field of play, if not closer, to the wheelchair seating he enjoyed before the total reconstruction of the lower field box seats after the 2016 Season.

**ANSWER:** Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant. To the extent this allegation does not relate to Plaintiff's claim regarding vertical dispersion, Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 53, and on that basis, Defendant denies the allegations of Paragraph 53.

54. The row of lower box wheelchair seats behind home plate that existed before the 2017 Season should be returned to its previous location vertically and horizontally.

13

**ANSWER:** Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant. To the extent this allegation does not relate to Plaintiff's claim regarding vertical dispersion, Paragraph 54 sets forth legal conclusions and to which no response is required and on that basis, Defendant denies the allegations of Paragraph 54.

55. Plaintiff and other wheelchair patrons should not be made to sit in a worse wheelchair seating location than before the seating area behind home plate was completely demolished and rebuilt.

**ANSWER:** Paragraph 55 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 55.

56. Before 2012, Plaintiff attended baseball games at the Great American Ball Park in Cincinnati, Ohio, including a Chicago Cubs vs. Cincinnati Reds game.

**ANSWER:** Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 56, and on that basis, Defendant denies the allegations of Paragraph 56.

57. The Great American Ball Park has a luxury club underneath the lower box seating area behind home plate which gives patrons access to front row wheelchair seating next to the home and visitor's dugouts.

**ANSWER:** Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 57, and on that basis, Defendant denies the allegations of Paragraph 57.

58. Plaintiff has greatly enjoyed sitting in front row wheelchair seats next to the visitor's dugout while at The Great American Ball Park.

**ANSWER:**     Defendant lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 58, and on that basis, Defendant denies the allegations of Paragraph 58.

59.     After the 2017 Season, the Cubs demolished to the ground lower box seats down the first and third base lines including seating next to the dugouts.

**ANSWER:**     Defendant admits only that as part of the renovation, certain portions of the concrete structure of the lower level of the grandstands and encompassing the dugouts were replaced. Defendant denies the remaining allegations of Paragraph 59.

60.     Combined with the demolishing and reconstruction of lower box seating area behind home plate after the 2016 Season, by Opening Day 2018 the Cubs will have completely rebuilt the seating areas now known as the American Airlines 2014 [sic] Club, Club Box infield, Club Box outfield, Bullpen Box infield, and Field Box outfield.

**ANSWER:**     To the extent Paragraph 60 relates to Plaintiff's claims regarding availability of accessible wheelchair seating in luxury boxes and vertical dispersion of accessible seating which were dismissed by this Court, no response is required. To the extent Paragraph 60 relates to Plaintiff's other claims under the ADA, Defendant admits only that certain portions of the concrete structure of the lower level grandstands were replaced. Defendant denies the remaining allegations of Paragraph 60.

61.     In 2018, plaintiff would like to enjoy wheelchair seating in the front row of the lower box seats at Wrigley Field, in a seating area now designated the American Airlines 2014 [sic] Club.

**ANSWER:**     To the extent Paragraph 61 relates to Plaintiff's claims regarding availability of accessible wheelchair seating in luxury boxes and vertical dispersion of accessible

seating which were dismissed by this Court, no response is required. To the extent Paragraph 61 relates to Plaintiff's other claims under the ADA, Defendant responds that it lacks sufficient information at this time to admit or deny the allegations set forth in Paragraph 61, and on that basis, Defendant denies the allegations of Paragraph 61.

62.     As of March 9, 2018, the Cubs were not selling any ADA seats in the American Airlines 2014 [sic] Club for the 2018 Season.

**ANSWER:**    Plaintiff's claim regarding availability of accessible wheelchair seating in luxury boxes was dismissed by this Court, and no response is required by Defendant.

63.     If there are any barriers to wheelchair seating in the American Airlines 2014 [sic] Club, the barriers were intentionally created by, or left by, the Cubs after rebuilding that seating area from the ground up beginning after the 2016 Season.

**ANSWER:**    Plaintiff's claim regarding availability of accessible wheelchair seating in luxury boxes was dismissed by this Court, and no response is required by Defendant.

64.     In 2018, plaintiff would like to be able to sit in club and field seats down the first and third base lines in seating areas that were completely rebuilt between the end of the 2017 Season and the beginning of the 2018 Season but no such ADA seats exist.

**ANSWER:**    To the extent Paragraph 64 relates to Plaintiff's claims regarding availability of accessible wheelchair seating in luxury boxes which was dismissed by this Court, no response is required. To the extent Paragraph 64 relates to Plaintiff's other claims under the ADA, Defendant states that accessible wheelchair seating is provided in certain field box sections. Defendant lacks sufficient information at this time to admit or deny the remaining allegations set forth in Paragraph 64, and on that basis, Defendant denies the remaining allegations of Paragraph 64.

65. On Opening Day 2018, Wrigley Field will not have the total number of wheelchair seats required by the 2010 ADA Standards.

**ANSWER:** Defendant admits that as the renovation was conducted on a phased basis over a period of more than five years following its commencement after the 2014 baseball season, the full complement of planned accessible wheelchair spaces had not yet been completed prior to the start of the 2018 season. Defendant denies the remaining allegations of Paragraph 65.

66. According the Cubs official website, on March 9, 2018 the Cubs state that Wrigley Field has a seating capacity of 41,160.

**ANSWER:** Denied.

67. The ADA Table for the Number of Wheelchair Spaces in Assembly Areas requires 36 seats for 5001 or more seats plus 1 for each 200 or fraction thereof over 5000.

**ANSWER:** Paragraph 67 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 67.

68. Wrigley Field should have at least 217 ADA seats on Opening Day

**ANSWER:** Paragraph 68 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 68.

69. Wrigley Field will have around 64 ADA wheelchair seats on Opening Day 2018.

**ANSWER:** Denied.

70. For the 2018 Season, Wrigley Field will not have the minimum required number of ADA seats.

**ANSWER:** Paragraph 70 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 70.

71. For the 2018 Season, the Cubs will not have the minimum number and required distribution of ADA luxury box seating.

**ANSWER:** To the extent Paragraph 71 relates to Plaintiff's claims regarding availability of accessible wheelchair seating in luxury boxes which was dismissed by this Court, no response is required. To the extent Paragraph 71 relates to Plaintiff's other claims under the ADA, Defendant denies the allegations of Paragraph 71.

72. The Cubs maintain that Wrigley Field has ADA wheelchair seating under the grandstand along the third base line.

**ANSWER:** Defendant admits that it has accessible wheelchair seating under the grandstand along the third base line.

73. The seating under the grandstand along the third base line does not comply with ADA requirements because the view of the game is obstructed by the grandstand and the view from these seats is far inferior to view enjoyed by most other patrons.

**ANSWER:** Paragraph 73 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 73.

74. The Cubs' Seating Map for 2018 does not identify the location of ADA seats at Wrigley Field.

**ANSWER:** Denied.

75. Wheelchair patrons cannot enjoy the same benefit of the Seating Map as non-wheelchair patrons because looking at the Seating Map they do not know where and how many seats are available to them.

**ANSWER:** Paragraph 75 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 75.

18

76.     Not identifying the location and number of ADA seats discourages wheelchair patrons from attending games.

**ANSWER:**    Paragraph 76 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 76.

77.     In 2017, plaintiff attempted to purchase a ticket to a post-season game but was unable to do so because ADA seats were not separately available for on line purchase or available via an online lottery for ADA seats.

**ANSWER:**    Defendant denies the allegation that accessible wheelchair seating was not available for sale for post-season games in 2017. Defendant lacks sufficient information at this time to admit or deny the remaining allegations set forth in Paragraph 77, and on that basis, Defendant denies the allegations of Paragraph 77.

COUNT I

(American [sic] With Disabilities Act)

78.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs as if set forth in full herein.

**ANSWER:**    Defendant repeats and reincorporates by reference its responses to Paragraphs 1-77 as if fully set forth herein.

79.     With regard to new construction and alterations at Wrigley Field, the Chicago Cubs have a duty to comply with Title III of the American [sic] with Disabilities Act.

**ANSWER:**    Paragraph 79 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 79.

80.     With regard to the new construction and alterations at Wrigley Field after March 15, 2012, the Chicago Cubs have a duty to comply with the 2010 ADA Standards for Accessible Design.

**ANSWER:**     Paragraph 80 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 80.

81.     The ADA requires that wheelchair spaces be an integral part of the seating plan at Wrigley Field.

**ANSWER:**     Paragraph 81 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 81.

82.     The Chicago Cubs' seating plan at Wrigley Field is required to provide wheelchair spectators with choices of seating locations and view angles that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to other spectators.

**ANSWER:**     Paragraph 82 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 82.

83.     The ADA requires that wheelchair spaces be dispersed horizontally around the field of play.

**ANSWER:**     Paragraph 83 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations in Paragraph 83.

84.     The ADA requires that wheelchair spaces be dispersed vertically.

**ANSWER:**     Plaintiff's claim regarding vertical dispersion of accessible wheelchair seating was dismissed by this Court, and no response is required by Defendant.

85.     Notwithstanding their duty to comply with the ADA, the Chicago Cubs have violated their duty to comply with the ADA.

**ANSWER:**     Denied.

86.     The removal of barriers requested herein are readily achievable.

**ANSWER:**    Paragraph 86 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 86.

87.    The Cubs are refusing to make reasonable accommodations to comply with the ADA.

**ANSWER:**    Denied.

88.    Plaintiff has suffered emotional injuries because he has not been able to fully enjoy wheelchair seating at Wrigley Field because of the Chicago Cubs' violations of the ADA.

**ANSWER:**    Denied.

89.    Plaintiff reasonably believes he will continue to be injured in the future because of the Chicago Cubs' ongoing ADA violations.

**ANSWER:**    Paragraph 89 sets forth legal conclusions to which no response is required and on that basis, Defendant denies the allegations of Paragraph 89.

WHEREFORE, plaintiff requests that the Chicago Cubs Baseball Club, LLC be held in violation of the American [sic] With Disabilities Act and that the following relief be granted:

A.    That the Chicago Cubs be ordered to create at least three ADA seats in the American Airlines 2014 [sic] Club, including seats near each of the dugouts and behind home plate;

B.    That the Chicago Cubs be ordered restore the ADA general admission single (non-group) seating to Sections 316, 317, and 318 in the right field bleachers and sell ADA tickets thereto at a regular general admission bleacher ticket seat price;

C.    That the Chicago Cubs be ordered to restore the wheelchair seating in the lower field boxes behind home plate to the location vertically equal to, if not better than, the vertical location before the seating area was completely rebuilt after the 2016

Season. These seats should also be centered horizontally behind home plate as they were at the end of the 2016 Season. As part of fulfilling the overall request for the minimum number of seats, these restored seats should be expanded horizontally to include more seats;

D.     That the Chicago Cubs be ordered to make seating in Section 305 accessible to general admission single (non-group) bleacher ADA ticket holders at a regular general admission bleacher ticket seat price;

E.     That the Chicago Cubs be ordered put into place ADA wheelchair seating in the center field bleachers;

F.     That the Chicago Cubs be ordered put into place wheelchair seating in lower field boxes down the first and third base lines which complies with the ADA;

G.     That the Chicago Cubs be ordered to provide wheelchair patrons with the total number of wheelchair seats required by the ADA;

H.     That the Chicago Cubs be ordered to provide wheelchair patrons with seating the complies with the horizontal and vertical seating requirements of the ADA;

I.     That the Chicago Cubs be ordered to create a Seating Map which identifies the location and number of ADA by section and row and make this Seating Map available online and in printed form;

J.     That the Chicago Cubs be ordered change their post-season ticketing policy to provide wheelchair patrons with reasonable access to post-season ADA tickets;

K.     That the Chicago Cubs be ordered to pay the reasonable attorney's fees, costs and expenses of this lawsuit; and

L.     That this Court order such further relief as is appropriate.

**ANSWER:** Defendant denies that Plaintiff is entitled to the relief requested in the Wherefore clause or in the separately enumerated subparagraphs thereof, or to any other relief.

COUNT II

(Rehabilitation Act)

90. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs as if set forth in full herein.

**ANSWER:** Defendant repeats and reincorporates by reference its responses to Paragraphs 1-89 as if fully set forth herein.

91. Plaintiff has suffered and will continue to suffer injuries because of the Chicago Cubs' violations of Title III of the ADA.

**ANSWER:** Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant. Defendant denies that it has violated Title III of the ADA.

92. Plaintiff has and will be denied the opportunity to participate in and enjoy watching baseball games at Wrigley Field by reason of his disability.

**ANSWER:** Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

93. The Chicago Cubs are subject to the Rehabilitation Act's requirements to not intentionally discriminate against handicap persons if the Chicago Cubs receive federal financial assistance.

**ANSWER:** Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

94. The Chicago Cubs received federal financial assistance for the reconstruction of the bleachers.

**ANSWER:**    Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

95.    The Chicago Cubs intentionally discriminated against the plaintiff for profit by replacing ADA wheelchair seating in the right field bleachers with a premium seating area featuring a bar.

**ANSWER:**    Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

96.    The Chicago Cubs intentionally discriminated against the plaintiff for profit by refusing to install ADA wheelchair seating in the American Airlines 2014 [sic] Club.

**ANSWER:**    Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

97.    The Chicago Cubs intentionally discriminated against the plaintiff for profit by otherwise violating the ADA as described herein.

**ANSWER:**    Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

WHEREFORE, plaintiff requests that the Chicago Cubs Baseball Club, LLC be held in violation of the Rehabilitation Act and that the following relief be ordered:

A.    That the relief requested in paragraphs A-J in Count I above be Ordered herein;

B.    That the plaintiff be awarded compensatory damages;

B.    [sic] That the Chicago Cubs be ordered to pay the reasonable attorney' fees, costs and expenses of this lawsuit; and

C.    That this Court order such further relief as is appropriate.

Plaintiff demands a trial by jury on Count II.

24

**ANSWER:**     Plaintiff's Count II Rehabilitation Act claim was dismissed by this Court, and no response is required by Defendant.

## GENERAL DENIAL

Defendant denies every allegation in the Complaint not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Subject to a reasonable opportunity for investigation and discovery, and without assuming the burden of proof where it otherwise rests with Plaintiff, Defendant pleads the following defenses to the claims contained in the Complaint:

## FIRST DEFENSE

Subject to discovery, the Court lacks subject matter and/or other jurisdiction over all or portions of the Complaint.

## SECOND DEFENSE

The Complaint as a whole and each and every purported cause of action therein fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Subject to discovery, Plaintiff lacks standing to pursue his alleged claims because, among other reasons, he has not suffered any legally cognizable injury. Plaintiff's claims are barred to the extent that Plaintiff lacks standing to assert any or all of the causes of action alleged and/or remedies requested in the Complaint.

## FOURTH DEFENSE

Defendant has not engaged in, and is not engaging in, discrimination based on disability within the meaning of Title III of the ADA.

**FIFTH DEFENSE**

The stadium at issue in the Complaint predates enactment of the ADA and does not constitute new construction.

**SIXTH DEFENSE**

With respect to buildings or facilities that are eligible for listing in the National Register of Historic Places under the National Historic Preservation Act, or that are designated as historic under State or local law, Title III of the ADA does not require alterations or physical modifications that would threaten or destroy the historic significance of the building or facility.

**SEVENTH DEFENSE**

Title III of the ADA requires that facilities constructed prior to its enactment remove barriers to access only where it is readily achievable to do so, *i.e.*, where such removal does not involve much difficulty or expense.

**EIGHTH DEFENSE**

Title III of the ADA does not require that existing facilities remove barriers to access where such removal is structurally impracticable, or that alterations undertaken after January 26, 1992, or facilities constructed for first occupancy after January 26, 1993, comply with the ADA Standards where such compliance is structurally impracticable.

**NINTH DEFENSE**

Title III of the ADA does not require that existing facilities remove barriers to access where such removal is technically infeasible.

**TENTH DEFENSE**

Title III of the ADA does not require that existing facilities remove barriers to access where doing so is barred by applicable fire codes, building codes or other regulations.

**ELEVENTH DEFENSE**

To the extent that removing any barrier to access is not readily achievable, equivalent facilitation or other steps to provide individuals with disabilities access to goods, facilities, and services has been provided.

**TWELFTH DEFENSE**

Alterations subsequent to January 26, 1992 have complied with the applicable ADA Standards to the maximum extent feasible.

**THIRTEENTH DEFENSE**

All requirements set forth in the 1991 ADA Standards for Accessible Design are subject to conventional building industry tolerances for field conditions.

**FOURTEENTH DEFENSE**

The 2010 ADA Standards for Accessible Design only apply to new construction, alterations, and/or barrier removal undertaken on or after March 15, 2012.

**FIFTEENTH DEFENSE**

Title III of the ADA does not require that facility elements that comply with the requirements of the 1991 ADA Standards for Accessible Design be modified to comply with the 2010 ADA Standards for Accessible Design unless such elements are modified on or after March 15, 2012.

**SIXTEENTH DEFENSE**

Those requirements set forth in the 2010 ADA Standards for Accessible Design that are not expressed as a range with both specific minimum and maximum requirements are subject to conventional building industry tolerances for field conditions.

### SEVENTEENTH DEFENSE

To the extent that the facilities at issue in the Complaint do not comply fully with the applicable ADA Standards for Accessible Design, the facilities are nonetheless usable by individuals with disabilities because any noncompliance as alleged in the Complaint was *de minimis*, the respective facility was usable and accessible despite its alleged noncompliance, and/or Plaintiff was able to use and access the facility.

### EIGHTEENTH DEFENSE

Plaintiff fails to state a claim upon which relief can be granted because Defendant is not obligated by law or otherwise to implement the policies and procedures Plaintiff demands.

### NINETEENTH DEFENSE

Subject to discovery, some or all of Plaintiff's claims or allegations are barred by the applicable statutes of limitations.

### TWENTIETH DEFENSE

Some or all of Plaintiff's claims for relief are moot, and the court therefore lacks subject matter jurisdiction over those claims.

### TWENTY-FIRST DEFENSE

Plaintiff's claim for attorneys' fees or costs are barred or limited by mootness and/or lack of subject matter jurisdiction to the extent the facility complies with the ADA and/or comes into compliance with the ADA during the pendency of this litigation, pursuant to *Buckhannon Bd. & Care Home v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001).

### TWENTY-SECOND DEFENSE

Plaintiff's claims are barred to the extent they seek to impose upon Defendant obligations for which Defendant is not legally responsible.

### TWENTY-THIRD DEFENSE

Defendant and its agents, if any, acted reasonably and in good faith at all times material herein, based on all relevant facts, law and circumstances known by them at the time they acted.

### TWENTY- FOURTH DEFENSE

Subject to discovery, Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, consent, waiver, laches, and/or unclean hands.

### TWENTY- FIFTH DEFENSE

The Complaint, and each cause of action contained therein, is barred because Plaintiff has not been damaged or injured by reason or on account of the conduct alleged in the Complaint.

### TWENTY- SIXTH DEFENSE

Plaintiff is not entitled to the injunctive relief sought because it is too vague, overly broad, and unduly subjective for enforcement by the Court.

### TWENTY- SEVENTH DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which compensatory and/or punitive damages may be granted.

### TWENTY-EIGHTH DEFENSE

Defendant specifically objects to a jury determination of any equitable issue in this action or other issues not triable to a jury.

### ADDITIONAL DEFENSES

Defendant reserves the right to raise any additional defenses as may be found to be merited during the course of discovery in, or trial of, this action, including without limitation any equitable defense.

**WHEREFORE**, Defendant prays that this Court enter a judgment:

a. dismissing the Complaint with prejudice;
b. granting Defendant its costs, including attorneys' fees, incurred in this action; and
c. granting Defendant such other and further relief as the Court may deem just and proper.


Dated:  May 5, 2020                                 Respectfully submitted,

                                                    CHICAGO CUBS BASEBALL
                                                    CLUB, LLC

                                                    By:*/s/Teresa L. Jakubowski*
                                                    One of Its Attorneys

                                                    John F. Kuenstler, #6216396
                                                    Kelsey Schmidt, #6321457
                                                    BARNES & THORNBURG LLP
                                                    One North Wacker Drive, Suite 4400
                                                    Chicago, Illinois  60606
                                                    Tel.:    (312) 357-1313
                                                    Fax:    (312) 759-5646
                                                    john.kuenstler@btlaw.com
                                                    kelsey.schmidt@btlaw.com

                                                    Teresa L. Jakubowski
                                                    (admitted *pro hac vice*)
                                                    BARNES & THORNBURG LLP
                                                    1717 Pennsylvania Avenue NW, Suite 500
                                                    Washington, DC  20006-4623
                                                    Tel.:    (202) 289-1313
                                                    Fax:    (202) 289-1330
                                                    teresa.jakubowski@btlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 5, 2020, the foregoing **Answer to Plaintiff's Third Amended Complaint** was served via the Court's ECF system on the following counsel of record:

David A. Cerda
Cerda Law Office
1624 West Division Street, No. 209
Chicago, Illinois 60622
dcerda@cerdalaw.com


*Teresa L. Jakubowski*